FILED
CLERK

9/22/2021 8:53 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SERGIO AVILA,

                              Plaintiff,

                                                                              **ORDER**

              -against-                                          21-CV-907 (PKC)(JMW)

TARGET CORPORATION,

                              Defendant.
-------------------------------------------------------------X

> *"The basic purpose of the federal rules, particularly those concerning discovery and disclosure, is to eliminate trial by ambush, sometimes called the sporting theory of justice, and avoid . . . surprise."*[1]

**WICKS,** Magistrate Judge:

       The Federal Rules of Civil Procedure are designed to encourage full pre-trial disclosure to avoid surprise at trial. *See Loral Fairchild Corp. v. Victor Co. of Japan, Ltd.*, 911 F. Supp. 76, 79 (E.D.N.Y. Jan. 5, 1996) ("The Federal Rules of Civil Procedure are designed to eliminate surprise") (citation omitted). "The pre-trial deposition-discovery mechanism established by Rules 26 to 37 is one of the most significant innovations of the Federal Rules of Civil Procedure. . . . Thus, civil trials in federal courts no longer need to be carried on in the dark. The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial." *United States v. 50.34 Acres of Land, More or Less, In Village of East Hills, Nassau County, N.Y.*, 13 F.R.D. 19, 21 (E.D.N.Y. 1952) (quoting *Hickman v. Taylor*, 329 U.S. 495, 500–501 (1947)).

---

[1] *Ginns v. Towle*, 361 F.2d 798, 801 (2d Cir. 1966).

1

"The federal rules envision that discovery will be conducted by skilled [persons] of the bar, without wrangling and without the intervention of the court.  The vision is an unreal dream." *Harlem River Consumers Co-op., Inc., v. Associated Grocers of Harlem, Inc.*, 54 F.R.D. 551, 553 (S.D.N.Y. 1972).  The protective order rule "confers great power upon the court, and I suppose it is possible for the court, operating under those provisions, to quite cripple the use of discovery, but such a result is certainly not to be apprehended.  The protective orders will doubtless be used for the purpose for which they are intended, namely, to prevent abuse of the discovery rules." 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2036 (3d ed. 2021) (citation omitted).

Before the Court is an application to delay production of a non-privileged video recording of the event at issue.  Delay is sought here for admittedly tactical reasons.  Delay is sought in the form of a protective order.

### I.     BACKGROUND

On April 23, 2020, at 4:12 p.m., Plaintiff fell in an aisle of the electronics department of Defendant Target Corporation's ("Target") Store located in Central Islip, New York.  There is stark disagreement over the cause of the accident and the injuries sustained. Target, however, in the regular course of its business, maintains video surveillance footage at that location which, in this case, captured the incident.  Target identified the footage for production to Plaintiff.  However, Target wants to delay its production until *after* Plaintiff's deposition.  Instead of taking a page out of Warner Wolf's book who might've been inclined during the deposition to

pronounce, *"let's go to the videotape"*,[2] Target instead seeks a protective order under Rule 26(c) to withhold the video footage until testimony is complete. (DE 21.)

Target claims that since "the allegations contained in plaintiff's discovery responses and medical records are at complete odds with what is depicted in the store video, [this warrants] withholding the video in order to preserve its impeachment value." (DE 21 at 1.) Specifically, there are three areas of purported disparity: (1) Plaintiff was caused to slip and fall due to a "liquid/yogurty substance" existing on the floor (DE 21, Ex. A, ¶ 5); (2) As a result of Plaintiff's slip and fall, the Plaintiff's entire body, predominantly his left side, came into contact with the floor surface (DE 21, Ex. A, ¶ 6); and (3) "pt states he lost consciousness for a few seconds s/p fall…" (DE 21, Ex. B). At bottom, Target wants to hold back production of the video, see what Plaintiff says in his deposition, then use the video to impeach later at trial or in a motion.

At Defendant's suggestion and proffer, the Court was provided the footage for an *in camera* viewing prior to oral argument (DE 21; DE 9/13/2021).[3] Oral argument was held on September 14, 2021, with the Court reserving decision pending the instant written order. (DE 24.)

---

[2] Sportscaster Warner Wolf "coined the phrase that infused New York's sports lingo 'Let's go to the videotape,'" which has endured for decades. David J. Halberstam, *Warner Wolf: 'Let;'s Go to The Video Tape',* Sports Broadcast Journal (April 17, 2018), https://www.sportsbroadcastjournal.com/warner-wolf-lets-go-to-the-video-tape/.

[3] A well-established practice in federal courts is to require parties seeking to avoid disclosure of documents to make the documents available for *in camera* review by the court. *See United States v. Zolin*, 491 U.S. 554, 568-69 (1989). Both this Court and the S.D.N.Y. have granted requests to review video footage *in camera* prior to making a determination on a Rule 26(c) motion. *See Santos De Paulino v. Target Corp.*, No. 20-CV-03506 (JS) (ST) (E.D.N.Y. Oct. 27, 2020) (Tiscione, U.S.M.J.) ("The Court reviewed evidence *in camera*. For the reasons discussed during the conference, Defendant's first MOTION for Protective Order is granted"); *Ampong v. Costco Wholesale Corp.*, No. 1:21-CV-02049 (CM) (SDA), 2021 U.S. Dist. LEXIS 141140, at *5 (S.D.N.Y. July 27, 2021); *Valenza v. Target Corp.*, No. 18 Civ. 7375 (NSR) (PED) (S.D.N.Y. Feb. 6, 2019). "[T]he propriety of such review is a matter entrusted to the district court's discretion." *See Loc. 3, Int'l Bhd. of Elec. Workers v. NLRB*, 845 F.2d 1177, 1180 (2d Cir. 1988). Defendant here is not seeking to avoid disclosure, just to alter timing of production.

## II. STANDARD

### A. Rule 26(c)

Rule 26(c) affords protections for abusive or embarrassing discovery, providing that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1); *see Gordon v. Target Corp.*, 318 F.R.D. 242, 246 (E.D.N.Y. 2016) ("[T]he touchstone for determining whether to issue a protective order under Rule 26(c) lies, in the first instance, on a party's ability to establish good cause"). The burden is on the party seeking issuance of the order to show "good cause" through "particular and specific facts" as opposed to "conclusory assertions." *Rofail v. United States*, 227 F.R.D. 53, 54–55 (E.D.N.Y. 2005). "[I]t is well within a magistrate judge's broad discretion to time document production." *Lang v. Wal-Mart Stores, Inc.*, No. 15-CV-2528 (JFB) (AYS), 2015 U.S. Dist. LEXIS 182916, at *3 (E.D.N.Y. July 16, 2015). "If the movant establishes good cause for protection, the court may balance the countervailing interests to determine whether to exercise discretion and grant the order." *Rofail*, 227 F.R.D. at 55.

The cases that have addressed the issue presented here, namely, whether the surveillance video footage may be withheld until the plaintiff's deposition is complete, appear to have been raised in the context of a Rule 26(c) application. However, nothing in the language of Rule 26(c) would seem to support that the device may be used to gain a strategic or tactical advantage in a litigation, for example, to hold back production of evidence to provide fodder for later impeachment. Rather, in this Court's view, such an application seeks to alter the sequence of discovery, which is governed by Rule 26(d).

4

Rule 26(d)(3) provides that "[u]nless the parties stipulate or the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice: (A) methods of discovery may be used in any sequence; and (B) discovery by one party does not require any other party to delay its discovery." See Fed. R. Civ. P. 26(d)(3). "As originally written, this portion of Rule 26(d) merely made explicit the power already provided under Rule 26(c), and the procedure for obtaining an order and the establishment of grounds for the order were ordinarily the same as for any other protective order.  Upon a proper showing, however, the court could make whatever order about sequence and timing of discovery the necessities of a case required." 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2047 (3d ed. 2021). "The Court possesses significant discretion . . . to modify the sequence or timing of discovery" pursuant to Rule 26(d). *Uni-Systems, LLC v. U.S. Tennis Ass'n*, No. 17-CV-147 (KAM) (CLP), 2017 U.S. Dist. LEXIS 148680, at *11 (E.D.N.Y. Sep. 13, 2017).

However, like Rule 26(c), nothing in Rule 26(d) contemplates sequencing discovery for tactical advantage to one party over another. See *Rofail*, 227 F.R.D. at 57–58 (recognizing that Rule 26(d) operates "for the convenience of parties and witnesses and in the interests of justice" and that "[a]llowing litigants to obtain a court-sanctioned advantage solely because they asked for it runs counter to these principles"); *Faulkner v. ICF Int'l*, No. 07-932-RET-SER, 2008 U.S. Dist. LEXIS 78082, at *2 (M.D. La. Oct. 3, 2008) ("Defendant invokes [Rule 26(d)(3)] for the purpose of either gaining a perceived tactical advantage or denying the plaintiff a perceived tactical advantage, but not 'for the parties' and witnesses' convenience and in the interest of justice.'  Since the defendant's desire to depose the plaintiff first is not for the convenience of either parties or the witnesses, [Rule 26(d)(3)(B)] controls—'discovery by one party does not require the other party to delay its discovery.'"); *LLOG Expl. Co., LLC v. Fed. Flange, Inc.*, No.

5

17-02323 SECTION: "H" (4), 2018 U.S. Dist. LEXIS 107022, at *9–*10 (E.D. La. June 27, 2018) ("The Court finds that LLOG has failed to demonstrate that the extension of time to respond will convenience the parties or witnesses or that it serves the interests of justice. Instead, the Court finds that LLOG is seeking a specific sequence of discovery for a tactical advantage.").

Here, Target's application is brought under Rule 26(c), although, as noted above, the Court is not convinced that Rule 26(c) is the appropriate vehicle when one seeks to alter sequence of discovery rather than obtain a true protective order with conditions to avoid embarrassment, harassment, prejudice and the like. Notwithstanding the Court's doubt as to the applicability of Rule 26(c), the Court has applied the "good cause" standard to Target's application, as discussed below.

### B. Protective Order Applications in Video Surveillance Cases[4]

In seeking such a protective order here, the Court notes that "*this ain't [Target's] first rodeo*"[5] under Rule 26(c). Indeed, Target's applications in this very Court have received varying results. Compare *Gormley v. Target Brands, Inc.*, 19 CV 07214 (E.D.N.Y. June 23, 2020) (Minute Order entered by M.J. Locke granting protective order) with *Gordon v. Target Corp.*, 318 F.R.D. 242 (E.D.N.Y. 2016) (M.J. Tomlinson denying application for protective order). Sometimes the court has been asked to consider a plaintiff's motion to compel, rather than a defendant's motion for a protective order, *see, e.g., Fallica-Risteff v. Target Corp.*, No. 16-CV-4195 (LDW) (ARL), 2016 U.S. Dist. LEXIS 187410, at *2 (E.D.N.Y. Oct. 14, 2016) (Lindsay, M.J.) (denying plaintiff's motion to compel the video of the accident to be disclosed

---

[4] The phrase video surveillance as used here refers to video surveillance done in the regular course of one's business, as opposed to investigative video surveillance done post-incident.
[5] The idiom, "*this ain't my first rodeo,*" appears to have been first uttered by Joan Crawford in the movie *Mommie Dearest*.

prior to plaintiff's deposition); *Caruso v. Target Corp.,* No. CV 12-2341 (JFB) (ARL), 2013 U.S. Dist. LEXIS 72690, at *2 (E.D.N.Y. May 22, 2013) (same).

This type of application is not uncommon, and yet, there are mixed results within this Circuit. *See Poppo v. Aon Risk Servs.*, No. 00 Civ. 4165 (HB), 2000 U.S. Dist. LEXIS 17588, at *3 (S.D.N.Y. 2000) (granting plaintiff's motion for protective order to delay disclosure of recorded statements made by defendants' agents/officers until after those witnesses' depositions, to prevent tailored testimony); *see also Lang*, 2015 U.S. Dist. LEXIS 182916, at *5–*6 (Bianco, J.); *Weinhold v. Witte Heavy Lift, Inc.*, No. 90 Civ. 2096 (PKL), 1994 U.S. Dist. LEXIS 4559, at *3 (S.D.N.Y. Apr. 11, 1994) ("In this way, the recording of plaintiff's sworn testimony will preclude any temptation on his part to alter his testimony based on what is seen on the surveillance tapes, yet the policy of broad discovery is nonetheless maintained") (citations omitted); *but see Gordon*, 318 F.R.D. at 246 (refusing to delay production of surveillance footage because the mere "'whiff' of possible improprieties on the part of Plaintiff are insufficient to establish good cause"); *Costa v. AFGO Mech. Servs.*, 237 F.R.D. 21, 25 n.1 (E.D.N.Y. 2006) ("Unlike surveillance videos that are often taken of the plaintiff following the filing of a lawsuit at the suggestion of defendant's counsel, in order to document the true nature of plaintiff's alleged injuries for purposes of impeachment at trial . . . where, as here, the tape has evidentiary value beyond mere impeachment, many courts require them to be produced before deposition") (citations omitted).

Cases outside of this Circuit too have gone in wildly different directions. *See Inferrera v. Wal-Mart Stores, Inc.*, No. 11-5675 (RMB/JS), 2011 U.S. Dist. LEXIS 146007, at *2–*3 (D. N.J. Dec. 20, 2011) ("[T]he hope or expectation that relevant evidence may impeach a witness does not establish good cause to delay the production of the evidence in discovery"); *Holbourn v. NCL Bah. Ltd.*, 305 F.R.D. 685, 688 (S.D. Fla. 2014) (holding that cruise ship's claim of

7

prejudice "appears to be speculative; [cruise ship] has not carried the burden to justify delayed production of the videos"); *Terman v. NCL (Bah.), Ltd.*, No 14-24727-CV-LENARD/GOODMAN, 2015 U.S. Dist. LEXIS 84963, at *3 (S.D. Fla. June 16, 2015) ("Defendant has not demonstrated to the Court that Plaintiff would tailor his testimony after viewing the surveillance video. Based upon the information provided at the hearing, the contents of the video are not significantly different than either plaintiff's allegations in the complaint or statements made regarding the incident by Plaintiff or any other individual"); *Gardner v. Norfolk S. Corp.*, 299 F.R.D. 434, 438 (D. N.J. 2014) ("[P]ermitting parties to delay production of this relevant evidence requested in the context of the parties' discovery requests would nullify the discovery process. [F]airness concerns weigh against the kind of sandbagging involved when the moving parties sets up grounds for impeachment by using undisclosed materials in an attempt to manufacture inconsistencies") (internal quotation omitted); *but see Bolitho v. Home Depot USA, Inc.*, No. 10-60053-CIV-COHN/SELTZER, 2010 U.S. Dist. LEXIS 76487, at *3–*4 (S.D. Fla. June 3, 2010) ("The Court . . . agrees with defendant that . . . utilizing the [C]ourt's discretion to allow the discovery deposition before disclosure [of the store surveillance footage to plaintiff] is an appropriate middle road to ensure that all relevant evidence reaches the trier of fact in a fair and accurate fashion") (internal quotation omitted); *Blount v. Wake Elec. Membership Corp.*, 162 F.R.D. 102, 104 (E.D.N.C. 1993) ("[B]efore the disclosure [of all surveillance materials], Defendant must be furnished with the opportunity to depose Plaintiff, so that the prior recording of the sworn testimony will discourage plaintiff from tailoring his testimony in light of what the films or tapes reveal"); *Parks v. NCL (Bah.) Ltd.*, 285 F.R.D. 674, 675 (S.D. Fla. 2012) ("The Court agrees with Defendant that Plaintiff should be required to give her deposition testimony based on her own independent recollection of the incident, without being refreshed in any way

by the videotape. Moreover, the Court does not find that Plaintiff will suffer any prejudice by delaying the production of the videotape").

### III. DISCUSSION

Having carefully reviewed the submissions of the parties and having heard oral argument (DE 21; DE 22; DE 24), the Court is compelled to deny Defendant's motion for a protective order.

A protective order used to alter the sequence of discovery for strategic purposes "deviates from the general principle of federal discovery that parties be forthcoming with relevant information in their possession." *Costa.*, 237 F.R.D. at 26 (internal quotation and citation omitted). Parties are not entitled to protective orders to simply withhold emails, documents, and photos until after a witness's deposition on the grounds that the witness might simply tailor testimony. *See Rofail*, 227 F.R.D. at 59 (holding that "a mere conclusory statement that a party might tailor its testimony to the statement does not establish good cause" for a protective order under Rule 26(c)). Seeking a protective order for a video that Plaintiff is entitled to see does not amount to the "abuse" that Rule 26(c) was founded upon. Rather, "[o]pen discovery is the norm. Gamesmanship with information is discouraged and surprises are abhorred. Adherence to these principles assists the trier of fact and serves efficiency in the adjudication of disputes." *Costa*, 237 F.R.D. at 26 (quoting *Rofail*, 227 F.R.D. at 58). To hold otherwise would allow parties to seek protective orders for otherwise producible evidence merely for strategic reasons, or, as a Magistrate Judge Schneider noted, for "gotcha games." *See Inferrera*, 2011 U.S. Dist. LEXIS 146007, at *3–*4 (D.N.J. Dec. 20, 2011) ("Impeachment evidence is available in virtually every case. If a party could delay the production of relevant

9

evidence to use for impeachment purposes at a deposition, then large swatches of discovery could be withheld. In addition, the same issue present here would come up in almost every case. . . . Taken to an extreme, the delayed production of relevant evidence could become the rule rather than the exception . . . . Thus, "gotcha games" are not acceptable.") (citations omitted). "Discovery is an instrument of justice . . . The court has the power and duty under Rule 26(c) to insist that the discovery process be conducted in an orderly and dignified atmosphere, free from intrusive and distracting side shows which only burden the search for the truth." *Harlem River Consumers Co-op., Inc., v. Associated Grocers of Harlem, Inc.*, 54 F.R.D. 551, 552 (S.D.N.Y. 1972) (citations omitted). Target concedes that its entire purpose of withholding the video until after Plaintiff's deposition is for impeachment purposes, essentially amounting to the exact "gotcha" game that would inhibit the discovery process from proceeding in the just manner that the Rules were designed to accomplish. Accordingly, the Court finds that Target has not shown good cause for withholding the video prior to Plaintiff's deposition.

### IV.  CONCLUSION

Based upon the foregoing, Defendant's motion, whether considered under Rule 26(c) or (d), is denied. Defendant is directed to produce the video footage of the incident to Plaintiff, after which Plaintiff's deposition may be scheduled.

Dated: Central Islip, New York
September 22, 2021

S O  O R D E R E D:

/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge